**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

FILED

JAN 12 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

Tamara Fox
504 Burnett Ave.
Dalton, OH 44618

      Plaintiff,

      -vs.-

The J. M. Smucker Company
c/o Mark Smucker
1 Strawberry Lane,
Orrville, OH 44667

      Defendant.

CASE NO.: 5 : 23 CV 62

JUDGE: JUDGE ADAMS

**COMPLAINT FOR RELIGIOUS DISCRIMINATION UNDER 42 U.S.C. § 2000e,** *et seq.*

**JURY DEMAND ENDORSED HEREON**

      For her Complaint against Defendant, The J. M. Smucker Company, Plaintiff Tamara Fox states:

### INTRODUCTION

      1. Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII") by failing to provide Plaintiff with required religious accommodation and by failing to engage in an interactive process to determine and provide reasonable accommodation.

      2. This suit seeks to remedy Defendant's statutory violations and discrimination against Plaintiff who requested a religious accommodation from Defendant's mandate that employees receive the COVID-19 vaccine.

      3. Rather than comply with its obligations under Title VII, Defendant threatened to terminate Plaintiff if she did not get vaccinated for COVID-19 and terminated Plaintiff for failure to do so.

      4. Defendant's statutory violations, discrimination, and retaliation left Plaintiff with the choice of receiving the COVID-19 vaccine in violation of her sincerely held religious beliefs or losing her job.

1

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e. Venue is proper under 28 U.S.C. § 1391(b) because the events complained of occurred in this District and Division.

## PARTIES

6. Plaintiff Tamara Fox lives in Dalton, Ohio and worked as a Senior Lab Technician in Coffee, Research and Development ("R&D") at The J. M. Smucker Company.

7. Defendant, The J.M. Smucker Company ("SMUCKER"), is an American marketer and manufacturer of jam, peanut butter, jelly, fruit syrups, beverages, shortening, ice cream toppings, and other food products in North America. Defendant is headquartered in Orrville, Ohio.

## FACTUAL ALLEGATIONS

8. Plaintiff worked at SMUCKER close to 17 years with a hiring date of July 11, 2005.  As a Senior Lab Technician, Plaintiff performed laboratory analysis and provided testing assistance, analytics and other support for other Coffee R&D project teams and personnel.

9. During her employment at SMUCKER, Plaintiff was an employee in good standing.  In June and July of 2021, she received two (2) bonus awards from Senior Vice President & General Manager, Coffee, Joe Stanziano in recognition of her attendance during the pandemic and for keeping production at record profits.

10. Plaintiff successfully worked onsite in a lab during the pandemic beginning approximately February of 2020 and up to the beginning of her unpaid leave effective December 16, 2021. She worked alone approximately 85-90 percent of the time in an enclosed 900 square foot lab, only encountering her co-workers or other personnel when they passed through the lab to other rooms or periodically conducted some testing. During the other 10-15 percent, Plaintiff entered other labs to do additional testing. All of the labs were conducive to social distancing

with a limited number of personnel, and often contained plastic curtain dividers that Plaintiff
used to fully separate herself from her co-workers. Plaintiff wore a mask and social distanced
whenever anyone approached her or worked in the same laboratory with her.

11. Plaintiff previously worked in other departments such as logistics, legal, sensory, product
management, and marketing and was qualified to work within those departments in alternate
positions, including those that enabled working from home.

12. Plaintiff is a devout practicing Christian who has attended church throughout her life.

13. Vaccination adoption rate in the hourly distribution and operations workforce hovered
considerably below that of corporate salaried and remained slightly above 60% as of March 15,
2022.

14. Upon information and belief, hourly distribution and operations workforce were told to
come back into work as of the 27th or 28th of January, 2021 even if not vaccinated.

**A. Defendant's Vaccine Mandate**

15. On September 9, 2021, President Biden issued Executive Order 14042 (the "Order").[1]

16. The Order required that all contracts with the Federal Government, and those of
subcontractors, include a clause requiring compliance with the Safer Federal Workforce Task
Force (the "Task Force") guidance regarding Covid-19 safeguards.

17. Following issuance of the Order, Task Force guidance required Covid-19 vaccination.[2]

---

[1] https://www.presidency.ucsb.edu/documents/executive-order-14042-ensuring-adequate-covid-safety-protocols-for-federal-contractors [last accessed 1/12/2023]
[2] https://www.saferfederalworkforce.gov/contractors/

18. Task Force guidance called for federal contractor employees to receive a complete round of Covid-19 vaccinations by January 18, 2022, unless legally entitled to an accommodation for medical or religious reasons.[3]

19. Around the same time the Federal Government co-opted Occupational Health and Safety administration ("OSHA") to issue a rule requiring employers with over 100 employees to mandate Covid-19 injections for their workforce.[4]

20. On September 10, 2021, CEO Mark Smucker announced via email that all U.S. employees would be "asked and expected" to be fully vaccinated in the months ahead. Smucker stated, ""While the immediate phase in front of us is a vaccine expectation, and not a mandate, we want to be clear that a mandate is on the horizon. This is necessary as we comply with federal requirements and act in support of our people and business." This was in addition to the indoor masking and social distancing protocol already in place at the Orrville corporate and certain other locations.

21. This announcement was soon followed by another email from Mark Smucker on September 21, 2021, that Defendant expected all U.S. salaried employees to be fully vaccinated by December

---

[3] *Id.* at 5. This mandate was stayed on December 7, 2021, when the Southern District of Georgia enjoined the Order nation-wide for federal contractors (*See Georgia v. Biden,* 574 F.Supp.3d 1337 (S.D. Ga. 2021), *aff'd in part, vacated in part sub nom. Georgia v. President of the United States,* 46 F.4th 1283 (11th Cir. 2022). In response to this nationwide injunction, Department of Defense guidance indicated on December 9, 2021 that it would not enforce the mandate on existing contracts and, on December 10, 2021, the Task Force updated its guidance stating that the government would not seek to enforce the clause implementing requirements of the Order where the place of performance identified in the contract is in the U.S. or an area subject to the injunction (*See "UPDATE TO ALERT DATED 12/7/21: Federal Court in Georgia Enjoins Enforcement of Federal Contractor/Subcontractor Vaccine Mandate Nationwide,"* https://www.smithcurrie.com/publications/covid-19/alert-federal-court-in-georgia-enjoins-enforcement-of-federal-contractor-subcontractor-vaccine-mandate-nationwide/
[4] On November 12, 2021, the U.S. Fifth Circuit Court of Appeals reaffirmed the halt of the large employer vaccine mandate as part of a nation-wide stay, and OSHA temporarily suspended its enforcement. On December 17, 2021, the U.S. Sixth Circuit Court of Appeals lifted the nationwide ban on the mandate. Finally, on January 13, 2022, the U. S. Supreme Court blocked enforcement of the emergency vaccine mandate for businesses with 100 or more employees. OSHA formally withdrew the mandate on January 26, 2022 (See "Vaccine Mandate Litigation," https://law.georgia.gov/resources/vaccine-mandate-litigation).

15, 2021. Defendant stated it would grant legally protected religious and medical exemptions. A link to a recorded Town Hall Meeting and an FAQ document accompanied the email. The meeting stressed that the vaccine expectation was because Defendant was a federal contractor.

22. On October 11, 2021, this expectation officially became a mandate for all U.S. salaried employees due to Defendant's status as a federal contractor. Smucker stated, "When we announced our vaccine *expectation* two weeks ago, it was our intent to take things at our own pace; to work together in partnership toward a vaccinated workplace. We knew at the time a mandate was almost certainly on the horizon based on forthcoming federal requirements, but the timeline was uncertain." Smucker further stated, **"This is no longer an expectation, but a requirement and condition of employment. Employees who do not comply with our Mandatory Vaccination Policy will be separated from the Company Dec. 16, 2021, and will not be eligible for severance."** This mandate did not apply as a condition of employment to hourly manufacturing and distribution employees.

### B. Federal Law Prohibiting Religious Discrimination and Retaliation

23. Title VII requires employers to offer reasonable accommodation to a requested religious exemption absent demonstration of undue hardship on their business. Failure to do so is an unlawful employment practice. 29 C.F.R. § 1605.2 (b)(1) (Up to date as of December 28, 2022).[5]

24. "[T]he sincerity of an employee's stated religious belief is usually not in dispute and is 'generally presumed or easily established.'" *See "Section 12: Religious Discrimination"* § 12-1. A.2, EEOC (Updated January 15, 2021).[6]

25. Title VII prohibits Defendant from discriminating against employees based on religion. This "include[s] all aspects of religious observance and practice, as well as belief, unless an

---

[5] https://www.ecfr.gov/current/title-29/subtitle-B/chapter-XIV/part-1605/section-1605.2#1605.2-footnote-2
[6] https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftnref40

employer demonstrates that he is unable to reasonably accommodate an employee's [...] religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

26. In other words, "[a]n employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees but is not required to incur undue hardship." *Weber v. Roadway Express*, 199 F.3d 270, 273 (5th Cir. 2000).

27. Title VII also prohibits Defendant from retaliating against employees for engaging in protected activity. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014).

28. U.S. Equal Employment Opportunity Commission (EEOC) guidance on Title VII and the COVID-19 pandemic provides that employers should "thoroughly consider all possible reasonable accommodation." Telework, masking and social distancing are examples of reasonable accommodation to vaccination. *See "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws"* §§ K.1, K.2, K.12, EEOC (Updated July 12, 2022).[7]

29. Although Defendant let employees apply for a religious or medical disability exemption to Covid-19 vaccination, Plaintiff's request for religious exemption was treated differently and processed in a discriminatory manner.

**C. Defendant's Accommodation Request System**

30. Defendant SMUCKER created a method for employees to request accommodation for exemption from Defendant's Covid-19 vaccination requirement. Employees had to submit requests by November 1, 2021.

31. Employees could request accommodation from the vaccine for religious reasons by submitting an explanation of their sincerely held religious belief and documentation from their

---

[7] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws]

religious leader as to the religious belief conflicting with the vaccine requirement. This explanation could be submitted either through a completed exemption form or a written explanation.

32. Defendant explained neither the review process nor the criteria for judging exemption requests to those submitting the requests.

33. Requests for reasonable accommodation to vaccination had to be submitted by November 1, 2021.

**D. Plaintiff's Accommodation Requests and Defendant's Responses**

34. On October 22, 2021, Plaintiff submitted her religious exemption request and received an automated reply.

35. Plaintiff's exemption request detailed the reasons for her religious conflict including the use of aborted fetal cell lines in the development of the vaccines, the importance of God-given free will to determine the medication and vaccinations she takes, and that taking the vaccine would be an expression of her lack of faith in her God-given immune system. She agreed with the Company's mask mandate, social distancing, and temperature screenings at work. Plaintiff further stated that she had "not once" during the pandemic needed to call in for time off or to be absent from work due to illness. Plaintiff achieved these goals while instructed to work in the lab 100% of the time.

36. Sometime in October after submission of her exemption request, Plaintiff received a meeting invite for an October 28, 2021 confidential exemption request discussion with Amy Powers ("POWERS") and Brittany Buchheit ("BUCHHEIT") of the HR Department.

37. On October 28, 2021, Plaintiff met with POWERS and BUCHHEIT for the exemption request discussion. During the meeting, POWERS and BUCHHEIT asked a series of questions including whether Plaintiff, her family or her children had taken any other prior vaccines. Plaintiff

was guardian of her two (2) nieces, so she responded that she did not know except when the children lived with her. The meeting felt like an interrogation rather than a discussion, and the questions were intrusive and intimidating. Because many of the questions were redundant to her exemption request, Plaintiff referred back to her submitted request for response at times.

38. Neither POWERS nor BUCHHEIT sought to discuss reasonable accommodation during the exemption request meeting on October 28, 2021.

39. Whether Plaintiff, her family, or children had prior vaccines is not related to the inquiry regarding whether Plaintiff's religious beliefs are sincere or whether reasonable accommodations can be provided. The question is an interrogation tactic intended only to coerce Plaintiff to capitulate to Defendant's demands.

40. Defendant's entire process for requesting religious exemption, including confidential meetings with no information as to the form and content of discussion, was geared to intimidate and discourage Plaintiff from seeking religious accommodation.

41. On November 11, 2021, Defendant emailed Plaintiff that Defendant was "unable to accommodate your request for exemption without undue hardship." However, the email then stated that Plaintiff was to be transitioned to unpaid leave as an "accommodation" beginning December 16, 2021 through end of January 2022 at which time it was to be re-evaluated. The wording of the email was uncertain – while it referenced unpaid leave as an accommodation, it also stated that they could not accommodate her request. Plaintiff understood it to mean that Defendant denied her exemption request. In the email, Defendant made no attempt to discuss any reasonable accommodations with Plaintiff and only offered unpaid leave for a very limited period of time.

8

42. Defendant extended this unpaid leave several times, ultimately through February 11, 2022 at which time Plaintiff was required to return to work and comply with Defendant's vaccination policy or be terminated.

43. On December 9, 2021, Defendant emailed Plaintiff an FAQ document about upcoming unpaid leave of absence because "you...requested an exemption from the Covid-19 vaccination requirement and were granted an accommodation by being placed on an unpaid leave of absence..."

44. While this process was ongoing and in a discussion with one of her managers, Plaintiff again offered to mask and do whatever was necessary to return to work. She had already made clear her willingness to mask, take temperature readings and socially distance in her exemption request.

45. On January 27, 2022, Defendant emailed Plaintiff that she would be terminated if not vaccinated by February 11, 2022.

46. Plaintiff was formally terminated effective February 12, 2022.

**E. EEOC filing and Plaintiff's right to sue**

47. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") raising the issues in this Complaint.

48. The EEOC issued Plaintiff a Notice of Right to Sue on October 14, 2022.

## COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious Discrimination-Failure to Accommodate

49. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

50. Plaintiff holds sincere religious beliefs that preclude her from receiving a COVID 19 vaccine.

51. Plaintiff informed Defendant of those beliefs and requested accommodation from the vaccine on religious grounds.

52. Although Plaintiff stated her willingness to comply with alternative measures such as masking, social distancing, and temperature screenings at work, Defendant failed to engage in an interactive process with Plaintiff regarding her request for religious accommodation. Defendant refused to offer or discuss any accommodation other than very limited unpaid leave. Defendant claimed undue hardship even though Plaintiff was able to safely and effectively perform high quality work in the lab – as evidenced by her two (2) bonus awards in mid-2021 – while masking and social distancing throughout the pandemic and never calling in sick. In addition, Plaintiff had work experience in five (5) other departments conducive to remote work for potential accommodation. Defendant ignored such mitigating factors as the fact that Plaintiff worked alone the majority of the time, a limited number of staff worked in the large, enclosed labs making them conducive to social distancing, Plaintiff typically utilized plastic divider curtains whenever someone else was in a lab with her, and Plaintiff followed a policy of masking whenever she encountered someone as they passed through or worked in the same lab as she did.

53. Defendant failed to provide Plaintiff with reasonable accommodations for her sincerely held religious beliefs.

54. Defendant discriminated against Plaintiff because of her religious beliefs.

10

55. Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

56. By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

## COUNT II
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious Discrimination-Retaliation

57. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

58. Plaintiff engaged in protected activity when she requested religious accommodations from Defendant's vaccine mandate.

59. Defendant responded with a denial of Plaintiff's request for religious accommodations by offering the equivalent of effective termination through a limited period of unpaid leave followed by formal termination.

60. Defendant responded to Plaintiff's protected activity by giving Plaintiff the false choice between vaccination and effective termination.

61. Plaintiff's religious beliefs and protected activity were the causes of Defendant's adverse employment action. Defendant did not bother engaging in an interactive process with Plaintiff because Defendant never intended to provide reasonable accommodations even if it conflicted with Plaintiff's sincerely held religious beliefs. Although Defendant claimed undue hardship as reason to deny Plaintiff's accommodation, Defendant had in fact allowed all hourly distribution and manufacturing employees to return to work on site without regard to vaccination status. Defendant's disregard and disparate treatment of religious accommodation requests for exemption from Covid-19 vaccination confirms Defendant's hostility to requests for religious accommodation.

11

62. Defendant retaliated against Plaintiff's protected activity by terminating Plaintiff's employment.

63. By retaliating against Plaintiff for engaging in protected activity, Defendant violated Title VII. This violation harmed and continues to harm Plaintiff.

**COUNT III**
**Violation of R.C. § 4112.02**
**Religious Discrimination in Employment**

64. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

65. Ohio Revised Code Section 4112.02 prohibits employment discrimination based on religion.

66. Defendant violated Ohio's Anti-Discrimination law when it terminated Plaintiff due to her religious objections to the Covid-19 vaccine.

67. Defendant has reasonable alternatives available that could have been offered to accommodate Plaintiff's religious beliefs, but Defendant refused Plaintiff those accommodations.

68. Defendant discriminated against Plaintiff because of her religion.

69. Defendant's failure to provide reasonable accommodations harmed and continues to harm Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court award her:

  a. Damages including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

  b. Injunctive relief.

  c. Reasonable attorneys' fees and costs.

  d. Any other relief that the Court considers just, proper, and equitable.

Respectfully submitted,

**MENDENHALL LAW GROUP**

/s/ Warner Mendenhall
Warner Mendenhall (0070165)
Brian Unger (096884)
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160; f 330.762.9743
warner@warnermendenhall.com
brian@warnermendenhall.com

*Attorneys for Plaintiff*

## JURY DEMAND

A trial by jury is demanded for all issues so triable.

Respectfully Submitted,

/s/ Warner Mendenhall
Warner Mendenhall (0070165)